#0658 53

ORIGINAL

FILED
DEC 19 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION,

Plaintiff,

v.

UNITED STATES,

Defendant.

Civil Action No. 06-866 L

---

**COMPLAINT**

---

Plaintiff, the Ute Indian Tribe of the Uintah and Ouray Reservation ("Ute Indian Tribe" or the "Tribe"), for its Complaint against Defendant, the United States (the "Defendant" or the "United States"), states as follows:

**Introduction**

1. Hundreds of millions of dollars of the Tribe's trust funds have been placed under Defendant's care, custody, and control. Defendant has failed to supervise, control, and manage properly those funds through numerous means, including by not prudently investing the trust funds by, among other things, maintaining much of them in Department of Treasury "overnighters" over the objection of the Tribe. The Ute Indian Tribe brings this action to obtain compensation and other relief (including an accounting to assist the Court) for damages arising from Defendant's breaches of trust and fiduciary duties owed to the Tribe.

**Parties, Jurisdiction, and Venue**

2. Plaintiff, the Ute Indian Tribe of the Uintah and Ouray Reservation, is a recognized Indian tribe organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476. Under that Act the Ute Indian Tribe has adopted a constitution that, among other things, establishes the Business Committee as the Tribe's governing body. Home for the Tribe's approximately 3,300 members is the Uintah and Ouray Reservation ("Reservation") in northeastern Utah.

3. Defendant, the United States, is trustee of funds it holds on behalf of the Ute Indian Tribe. The Defendant is vested with numerous trust and fiduciary responsibilities owed to the Tribe and employs various federal departments and agencies to fulfill those obligations. Those federal departments and agencies include the Department of the Interior (the "Department of the Interior"), the Department of Treasury (the "Department of Treasury"), the Bureau of Indian Affairs (the "BIA"), the Office of Trust Funds Management (the "OTFM"), and the Office of Special Trustee for American Indians (the "Special Trustee"). The Special Trustee is appointed by the Secretary of the Interior and charged with certain duties and responsibilities by the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001-4061, legislation enacted by Congress that recognizes the critical importance of proper management of trust funds to Native Americans.

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1505 (Indian Tucker Act) because this is an action by an Indian tribe residing within the territorial limits of the United States arising under the Constitution, laws, or treatises of the United States, executive orders of the President, and/or is one which would otherwise be cognizable in this Court if the

claimant were not an Indian tribe, band, or group. This action arises under various treaties, executive orders, laws, statutes, and regulations of the United States dating from the Treaty of Guadalupe Hidalgo in 1848. However, more recently, the United States' obligations with respect to Indian trust funds are confirmed and set forth in, among others, the following legal authorities:

a. Indian Reorganization Act of 1934, 25 U.S.C. § 476;

b. Act of August 21, 1951 (P.L. 120, 65 Stat. 193), regarding tribal funds of the Ute Indian Tribe of the Uintah and Ouray Reservation;

c. Act of July 14, 1956 (P.L. 717, 70 Stat. 546), regarding settlement of certain claims of the Uintah and White River Bands of the Ute Indians;

d. Act of September 13, 1970 (P.L. 91-403, 84 Stat. 843), regarding reimbursement of tribal funds of the Ute Tribe of the Uintah and Ouray Reservation;

e. Act of August 1, 1967 (P.L. 90-60, 81 Stat. 164), regarding disposition of judgment funds of the Confederated Bands of the Ute Indian Tribes;

f. Act of September 25, 1970 (P.L. 91-420, 84 Stat. 871), regarding disposition of judgment funds of the Confederated Bands of the Ute Indian Tribes, Ute Tribe of the Uintah and Ouray Reservation and the Uncompahgre Band of the Ute Indians;

g. American Indian Trust Fund Management Reform Act, 25 U.S.C. §§ 4001-4061;

h. Indian Tribal Judgment Funds Use or Distribution Act, 25 U.S.C. §§ 1401-1408;

i. 25 U.S.C. §§ 117a, 117b, 117c, 118, 122, 161, 161a, 161b, 161d, 162a, 671, 672, 676a, 676b, all of which pertain generally to trust funds and obligations of the Defendant;

j. Title V of the Central Utah Project Completion Act (a/ka Ute Indian Rights Settlement Act), Pub.L. 102-575, 106 Stat. 4650 (October 30, 1992);

k. The various Acts of Congress between December 22, 1987 (P.L. No. 100-202, 101 Stat. 1329) and August 2, 2005 (P.L. 109-54, 119 Stat. 499), all of which acts require the Department of the Interior to audit, reconcile,

and certify the results of reconciliation of tribal trust fund accounts and extend the statute of limitations for trust fund claims;

l. 25 C.F.R. Part 115 (Trust Funds for Tribes and Individual Indians); and

m. 25 C.F.R. Part 1200 (American Indian Trust Fund Management Reform Act).

5. This Court also has jurisdiction over this case pursuant to 28 U.S.C. § 1491(a)(1) (Tucker Act) because this is an action arising under the Constitution, laws, or treaties of the United States, acts of Congress, executive orders of the President, and/or regulations of executive departments, or upon express or implied contract with the United States and for liquidated or unliquidated damages and related relief.

6. Venue lies in this Court pursuant to 28 U.S.C. §§ 1505 and 1491(a)(1).

**The Ute Indian Tribe and the Uintah and Ouray Reservation**

7. The United States has had a fiduciary relationship with the Ute Indian Tribe since the Treaty of Guadalupe Hidalgo in 1848. See Ute Indians v. United States, 45 Ct.Cl. 440, 442-3 (Ct.Cl. 1910).

8. In 1861, President Abraham Lincoln reserved for the settlement of the Tribe two million acres of land in the Uintah Valley of Utah Territory. See Exec. Order of Oct. 3, 1861, I Kapp. 900 (2d ed. 1904).

9. In 1882, President Chester Arthur added nearly two million more acres to the lands reserved for the Ute Indian Tribe. See Exec. Order of Jan. 5, 1882, I Kapp. 901 (2d. ed. 1904).

10. Numerous Executive and Congressional actions have reduced the overall size of lands reserved for the Tribe.

11. Despite the historical reductions of the Tribe's lands, the modern-day Reservation embraces millions of acres of land with abundant natural resources, including minerals, timber, pasturage, crop land, wildlife, and water.

**The Ute Indian Tribe's Trust Funds**

12. From and after the formation of the Reservation, the Defendant has held funds in trust for the Tribe pursuant to treatises, laws, acts of Congress, executive orders of the President, and/or regulations, including but not limited to those identified in Paragraph 4 above. Presently, Defendant holds the Tribe's trust funds in a myriad of approximately sixty (60) separate accounts under the dominion and control of the OTFM.

13. The Tribe's various trust fund accounts appear to be generally organized based on the source of funds and/or restrictions on use of the funds. For example, the Tribe's various trust fund accounts include accounts holding funds from, among other things: settlements of claims and/or litigation; legal judgments against the United States and other parties; leases of lands, minerals, and/or oil and gas rights; sale of livestock; and sale of forestry products.

14. For purposes of this lawsuit, the Tribe's trust funds are divided into two general categories: (a) the CUPCA Trust Funds (as defined below in Paragraph 17 of this Complaint); and (b) the Other Trust Funds (as defined below in Paragraph 20 of this Complaint).

**The CUPCA Trust Funds**

15. In 1992, Congress enacted the Central Utah Project Completion Act, P.L. 102-575, 106 Stat. 4650 ("CUPCA"). Title V of CUPCA is entitled "Ute Indian Rights Settlement" and provides for payment of millions of dollars to the Ute Indian Tribe. The payments made to the Tribe under CUPCA were designed to redress certain of the Tribe's claims arising from the

failure of the United States to construct specified water projects required by various agreements between the Tribe and the United States.

16. Title V of CUPCA created four separate categories of funds for the benefit of the Ute Indian Tribe:

(a) The Section 502 Trust Funds. Section 502 of CUPCA provides, among other things, for payment to the Ute Indian Tribe of an amount of money deemed to be equivalent to a portion of the Tribe's water rights that were not delivered to the Tribe because the United States failed to construct portions of the Central Utah Project previously promised to the Tribe. The payments are sometimes referred to in CUPCA as "Bonneville Unit Tribal Credits" and are based upon: (1) for the first fifty years, twenty six percent (26%) "of the annual Bonneville Unit municipal and industrial capital repayment obligation attributable to thirty-five thousand five hundred acre-feet of water"; and (2) commencing in 2042, seven percent (7%) of "the then fair market value of thirty-five thousand five hundred acre-feet of Bonneville Unit agricultural water which has been converted to municipal and industrial water." Such payments are the "Section 502 Trust Funds." Section 502 Trust Funds were paid into a separate tribal trust account at the OTFM (Account No. JA-9112-358).

(b) The Section 504 Trust Funds. Section 504 of CUPCA provides, among other things, for payment of $45,000,000 to the Ute Indian Tribe for agricultural improvements to benefit the Tribe and its members (the "Section 504 Trust Funds"). The Section 504 Trust Funds were paid into a separate tribal trust account at the OTFM (Account No. JA-9112-424).

(c) Section 505 Trust Funds. Section 505 of CUPCA provides, among other things, for payment of a total of $28,500,000 to the Ute Indian Tribe for a number of specific

measures to improve reservoirs, streams, recreation, and water conveyance (the "Section 505 Trust Funds"). The Section 505 Trust Funds were paid into several separate tribal trust accounts at the OTFM: (1) Account No JA-9112-143, relating to Section 505(a) of CUPCA; (2) Account No. JA-9112-432, relating to Section 505(b) of CUPCA; (3) Account No. JA-9112-291, relating to Section 505(c) of CUPCA; (4) Account No. JA-9112-168, relating to Section 505(f) of CUPCA; and (5) Account No. JA-9112-309, relating to Section 505(g) of CUPCA.

(d) Section 506 Trust Funds. Section 506 of CUPCA creates a tribal development fund and provides, among other things, for a payment of a total of $125,000,000 to the Ute Indian Tribe for the tribal development fund, to be funded in three annual and equal installments (the "Section 506 Trust Funds"). The Section 506 Trust Funds were paid into a separate tribal trust account at the OTFM (Account No. JA-9112-218). The Section 506 Trust Funds were under the supervision, control, and management of the Defendant for over a decade before their release to the Tribe on March 17, 2005.

17. The Section 502, 504, 505, and 506 Trust Funds are referred to in this Complaint collectively as the " CUPCA Trust Funds."

18. CUPCA required that the Defendant pay the CUPCA Trust Funds to the Tribe within certain specified time periods. The Defendant failed to fund timely the CUPCA Trust Funds. Accordingly, CUPCA requires that the Tribe receive an adjustment for lost interest income for any portion of the CUPCA Trust Funds not funded timely.

**The Other Trust Funds**

19. As set forth above, the Defendant maintains numerous trust fund accounts for the benefit of the Tribe, including accounts relating to, among other things: settlements of claims

and/or litigation; legal judgments against the United States and other parties; leases of lands, minerals, and/or oil and gas rights; sale of livestock; and sale of forestry products.

20. Together, all tribal trust funds maintained by the Defendant for the benefit of the Ute Indian Tribe, except the CUPCA Trust Funds, are referred to in this Complaint as the "Other Trust Funds."

**The Fiduciary Obligations Of the Defendant To the Ute Indian Tribe**

21. The United States holds and controls all of the CUPCA Trust Funds and the Other Trust Funds in trust on behalf of the Ute Indian Tribe. As trustee of the CUPCA Trust Funds and the Other Trust Funds, the Defendant is held to "the most exacting fiduciary standards" because it "has charged itself with moral obligations of the highest responsibility and trust." See Seminole Nation v. United States, 316 U.S. 286, 297 (1942).

22. The CUPCA Trust Funds and the Other Trust Funds currently are managed through the OTFM, which is part of the Office of the Special Trustee within the Department of the Interior. Before the creation of the Office of the Special Trustee, OTFM was within the BIA, which itself is part of the Department of the Interior.

23. The Secretary of the Interior created OTFM to perform and implement the policies of the Office of the Special Trustee.

24. The Defendant has trust and fiduciary obligations to the Ute Indian Tribe with respect to the CUPCA Trust Funds and the Other Trust Funds. Such obligations flow from the treaties, executive orders, laws, and regulations of the United States (including among others those identified in Paragraph 4 of this Complaint) and common law describing and defining the

trust and fiduciary relationship between the Defendant and Indian tribes, including the Ute Indian Tribe.

25. With respect to Indian tribal trust funds, the Defendant's trust and fiduciary duties include, but are not limited to, those pertaining to the prudent investment of trust funds, such as:

a. Duty to make the tribal trust funds productive by investing tribal trust funds and maximizing, in a manner consistent with the statutory restrictions, the return on the investment of all tribal trust funds;

b. Duty to invest all tribal trust funds in public debt securities with maturities suitable to the needs of the funds involved and bearing interest at rates taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities;

c. Duty to manage tribal trust funds as a prudent investor in a manner consistent with statutory restrictions and exercising reasonable care and skill;

d. Duty to provide adequate controls over receipts and disbursements of tribal trust funds; and

e. Duty to establish consistent, written policies and procedures for tribal trust fund management and accounting.

26. The Defendant's trust and fiduciary duties also include, but are not limited to, the following:

a. Duty to appropriately manage natural resources located within the boundaries of Indian reservations and trust lands;

b. Duty to ensure Indian tribes enter into prudent transactions for the sale, lease, use, or disposition of the Tribe's natural resources;

c. Duty to enforce agreements for the sale, lease, use, or other disposition of the Tribe's natural resources, including to collect all proceeds due Indians under those agreements;

d. Duty to deposit timely in the Tribe's trust accounts all funds collected for sale and use of the Tribe's natural resources;

e. Duty to properly credit and record all transactions relating to the Tribe's trust funds and the Tribe's assets;

f. Duty to properly and completely account for all tribal trust funds;

g. Duty to provide adequate systems for accounting for and reporting tribal trust fund balances;

h. Duty to providing periodic, timely reconciliations to assure the accuracy of tribal trust fund accounts;

i. Duty to determine accurate cash balances for tribal trust funds;

j. Duty to prepare and supply account holders with periodic statements of their account performance with balances of their account which shall be available on a daily basis;

k. Duty to provide adequate staffing, supervision, and training for tribal trust fund management and accounting;

l. Duty to cause an annual audit to be performed of all tribal trust funds;

m. Duty to reconcile all tribal trust accounts to ensure that account holders receive a fair and accurate accounting of all trust funds;

n. Duty to properly maintain adequate records of tribal trust funds and assets; and

o. Duty to maintain confidentiality of information pertaining to Indian trust funds and assets.

**The Defendant Cannot Account for All Funds Held in Trust for the Ute Indian Tribe**

27. The federal government, through its various branches, has recognized and acknowledged widespread inadequacies in the records and accounting systems of the Defendant for funds held in trust for Indian tribes. See, e.g., Misplaced Trust: The Bureau of Indian Affairs Mismanagement of the Indian Trust Fund, H. R. Rept. No. 102-499 at 2 (1992) (Noting the "significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys"); Cobell v. Norton, 240 F.3d 1081, 1091 (D.C. Cir. 2001) ("The records upon which the

government must rely to fulfill its trust duties are woefully deficient"); Financial Management, Indian Trust Fund Accounts Cannot Be Fully Reconciled, GAO/T-AIMD-95-94 at 2 (1995) (Observing the "missing records ... inadequate systems, and inadequate accounting procedures" used in the management of Indian trust funds).

28. The Defendant controls the records of account relating to all of the trust funds of the Ute Indian Tribe.

29. The existing records and accounting systems used by Defendant in the management of the Ute Indian Tribe CUPCA Trust Funds and Other Trust Funds are inaccurate, unreliable, and incomplete. For example, in April of 2003, OTFM "discovered" that it had misplaced over $10,000,000 of tribal water settlement and development funds payable under CUPCA in an account (Account No. JA-9112-697) unrelated to *any* of the trust funds created under Title V of CUPCA.

30. The Defendant has failed to provide an audit, reconciliation, and/or accounting sufficient to allow the Tribe to assess fully the accuracy of current account balances or to quantify fully the extent of any losses resulting from the failure of the Defendant to fulfill its trust and fiduciary obligations to the Tribe.

31. On or about September 30, 1997, an accounting contractor of the Department of the Interior provided to the Tribe a "Report On Applying Agreed-upon Procedures and Consulting Services" ("Report") in a purported effort by the Office of the Special Trustee to reconcile trust funds of the Tribe for the period from July 1, 1972 to September 30, 1992. The Report failed to provide a meaningful accounting of the Tribe's CUPCA Trust Funds and Other Trust Funds.

32. For example, the Office of the Special Trustee directed the procedures to be used in the attempted reconciliation work reflected in the Report. The contractor, however, made clear that it would "make no representation regarding the sufficiency of the procedures [used] either for the purpose for which this report has been requested or for any other purpose," and warned that it did not "perform an audit." Report at 1, 6. The contractor did not even apply all of the Office of the Special Trustee's procedures in its evaluation of the Tribe's trust funds. Id. at 6. The Report suffers from the flaw found by the General Accounting Office to be common to all such reconciliation efforts: "BIA did not disclose in the report package to tribes the procedures specified in the reconciliation contract which were not performed or could not be completed and the reasons." Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 6 (1996).

33. Furthermore, the Office of the Special Trustee "provided the [] data" used by the contractor in preparing the Report. Report at 1. The fundamental problem with such an approach was recognized by the General Accounting Office when it observed that much of the reconciliation effort "focused only on transactions that had already been recorded in the general ledger, and no reconciliation procedure was performed to address the completeness of the general ledger itself." Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 4 (2002). In apparent recognition of that and other deficiencies, the Department of the Interior's contractor expressly refused to make any "representations as to the nature or validity of that work performed and previously reported to the account holders." Report at 6. The General Accounting Office also identified numerous other shortcomings in the Report, including missing

records, missing audit trails, cost and time constraints, and failure of certification, and found that "missing records and systems limitations made a full reconciliation impossible." Id. at 3.

34. The Report on its face addresses a time period before moneys were deposited in the Tribe's CUPCA Trust Funds accounts.

35. The failure of Defendants to maintain complete and accurate records, and the failure to provide the Tribe an adequate accounting of its trust funds, violates the trust and fiduciary obligations of the Defendant to the Ute Indian Tribe. The Report is not a full and complete accounting and reconciliation of the CUPCA Trust Funds and Other Trust Funds as required by law.

**The Defendant Mismanaged the CUPCA Trust Funds**

36. The CUPCA Trust Funds were deposited into separate tribal trust fund accounts at various times from approximately 1994 to 2004. The total amount of CUPCA Trust Funds deposited into the separate tribal trust fund accounts exceeds $257 million.

37. The CUPCA Trust Funds were not deposited within the time period required by law. Accordingly, the Defendant was required to provide adjustments representing the interest income that would have been earned on the amounts that were not timely paid.

38. The Defendant did provide some adjustments to the CUPCA Trust Funds, purportedly representing interest income that would have been earned on the amounts that were not timely paid. However, the Defendant did not base such adjustments upon appropriate and reasonable rates of interest or rates of return. Instead, the Defendant appears to have based the adjustments upon the rates of return earned by CUPCA Trust Funds principal. As set forth below, such returns were grossly deficient because of the Defendant's mismanagement of the

CUPCA Trust Funds. The CUPCA Trust Funds were under-funded from inception because the adjustments for late deposit of principal were improper.

39. After the CUPCA Trust Funds were finally deposited in the Tribe's trust accounts, they were under the dominion and control of the Defendant, through the OTFM. The Defendant mismanaged the CUPCA Trust Funds in numerous ways, including those described below.

40. The Defendant failed to prudently invest the CUPCA Trust Funds. Instead, the Defendant withheld excessive amounts of the CUPCA Trust Funds from productive investment and deposited such funds with the Department of Treasury, thereby earning only an overnight rate (the "Treasury Overnighter Program"). Trust funds placed in the Treasury Overnighter Program earn only a nominal amount of interest. For example, during 2003, the Treasury Overnighter Program generated returns of only approximately 1.25 to 1.3 percent per annum.

41. The inadequacy of the Treasury Overnighter Program rate should have been clear to the Defendant. Among other things, over a decade ago a report generated by a Reconciliation Project Manager hired by the Department of the Interior described the Treasury Overnighter Program rate as representing the rate of return on "uninvested funds" held in BIA's cash pool. Financial Management: BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 9 (May, 1996). That is, funds placed and maintained in the Treasury Overnighter Program are not even deemed invested.

42. Nevertheless, the Defendant used the Treasury Overnighter Program extensively over a lengthy period of time. The actual amounts uninvested in the Treasury Overnighter Program varied on a daily basis. As a result, during some months, more funds were placed in the

Treasury Overnighter Program than during other months. For example, April 2003 was a month in which the Defendant made especially high use of the Treasury Overnighter Program. On April 15, 2003, $68,534,265, or approximately thirty-one percent (31%) of the Tribe's CUPCA Trust Funds, were uninvested in the Treasury Overnighter Program.

43. From and after the initial funding of the CUPCA Trust Funds, the Defendant continued to place millions of dollars of the Tribe's CUPCA Trust Funds in the Treasury Overnighter Program despite the repeated protests of the Tribe and its professional financial advisors:

(a) Capital West Asset Management LLC evaluated OTFM's management of the CUPCA Trust Funds. In a report dated February 2, 2001, Capital West Management LLC showed substantial underperformance of OTFM investments. The Ute Indian Tribe discussed the results of the Capital West Asset Management LLC report with the Department of the Interior.

(b) The Business Committee of the Ute Indian Tribe passed Resolution 01-213, which authorized the Tribe's financial advisor to approach OTFM about selling and reinvesting the Tribe's trust fund assets. The Tribe's financial advisor had numerous conversations with OTFM concerning the investment of the Tribe's trust funds, including the inappropriateness of placing the CUPCA Trust Funds in the low-yield or uninvested Treasury Overnighter Program.

(c) The financial advisor to the Ute Indian Tribe informed OTFM on numerous occasions that it was imprudent to place the CUPCA Trust Funds in the Treasury Overnighter Program and that the returns on such securities were unacceptably low for the Tribe.

(d) On November 8, 2002, nearly all of the six members of the Tribe's Business Committee met with OTFM officials, among others, in Albuquerque, New Mexico. The Business Committee informed OTFM that the Ute Indian Tribe was distressed by the poor rate of return on the investment of tribal trust funds. The Business Committee also expressed concern over OTFM's refusal to discuss investment strategies with the financial advisor to the Ute Indian Tribe. At this meeting, OTFM refused to work with the Tribe's financial advisor.

(e) On April 16, 2003, nearly all of the six members of the Tribe's Business Committee met with OTFM officials, among others, in Salt Lake City, Utah. The Business Committee and its advisors again asked the OTFM officials to manage properly the Tribe's trust funds by, among other things, moving CUPCA Trust Funds out of the Treasury Overnighter Program and into prudent and productive investments.

44. The fiduciary duty to invest prudently the trust funds of the Tribe also includes "the responsibility to keep informed so that when a previously proper investment becomes improper, perhaps because of a better (and equally safe) investment elsewhere, funds can be reinvested." Cheyenne-Arapaho Tribes v. U.S., 512 F.2d 1390, 1394 (Ct. Cl. 1975).

45. OTFM failed to meet its obligation to actively manage the CUPCA Trust Funds of the Ute Indian Tribe by, among other things, holding all bond investments made on behalf of the Tribe until the bonds matured. The OTFM appears to have adopted a "buy and hold" policy, and implemented that policy irrespective of any changes in market conditions.

46. OTFM could have realized profits in the bond market if it sold bonds before their maturity date, and then reinvested in equally safe investments.

47. The Tribe has requested that OTFM sell bonds owned on behalf of the Tribe in order to take profits. OTFM refused, and consequently lost the opportunity to realize those profits on behalf of the Tribe in a prudent fashion.

48. The OTFM also otherwise failed to actively manage the CUPCA Trust Funds in a prudent fashion.

49. For example, the OTFM has imprudently overinvested CUPCA Trust Funds in callable bond instruments. Callable bond instruments are securities which may be called for payment by the issuer before their maturity.

50. The Defendant also failed to provide adequate staffing, supervision, and training in connection with management of the CUPCA Trust Funds. For example, in 2001, only one Investment Officer, Richard Zakrzewski, and one or two other people were assigned to manage the CUPCA Trust Funds. Their responsibilities also included management of billions of dollars of other Indian tribal trust funds for in excess of 300 other Indian tribes. As a result of their responsibilities to manage tribal trust funds for so many tribes and other duties, OTFM personnel were unable to actively and prudently manage the CUPCA Trust Funds.

51. Upon information and belief, the Defendant mismanaged the CUPCA Trust Funds in other ways.

52. The Defendant's mismanagement of the CUPCA Trust Funds resulted in gross underperformance in the earnings of the CUPCA Trust Funds and losses to the Tribe.

**The Defendant Mismanaged the Other Trust Funds**

53. The Defendant mismanaged the Other Trust Funds in the same fashion as the Defendant mismanaged the CUPCA Trust Funds and in other ways.

**FIRST CLAIM FOR RELIEF**
**(Breach of Trust and Fiduciary Duties: CUPCA Trust Funds)**

54. The Ute Indian Tribe incorporates by reference and reavers the allegations of Paragraphs 1-53 of this Complaint.

55. The Defendant exercised (and continues to exercise) broad authority and control over the Tribe's CUPCA Trust Funds pursuant to treaties, executive orders, statutes, regulations and other federal law and common law from which emanates the trust and fiduciary obligations of the Defendant to the Tribe.

56. The Defendant is subject to numerous trust and fiduciary duties and obligations to the Ute Indian Tribe including, without limitation, the duties and obligations described in Paragraphs 25 and 26 of this Complaint. With respect to the CUPCA Trust Funds, the Defendant repeatedly breached its trust and fiduciary obligations to the Tribe by mismanaging the CUPCA Trust Funds, including by: failing to make appropriate adjustments to the CUPCA Trust Funds for late payment; maintaining too much of the CUPCA Trust Funds in the Treasury Overnighter Program; holding on to bonds in the CUPCA Trust Funds until maturity; failing to actively manage the CUPCA Trust Funds; maintaining too much of the CUPCA Trust Funds in callable bonds; and failing to provide adequate staffing, supervision, and training for those charged with managing the CUPCA Trust Funds. More generally, the breaches of trust and fiduciary duties include, but are not limited to, the following:

a. Failure to properly and completely account for all CUPCA Trust Funds;

b. Failure to timely invest all CUPCA Trust Funds in public debt securities with maturities suitable to the needs of the CUPCA Trust Funds and bearing interest at rates taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities;

c. Failure to provide adequate systems for accounting for and reporting CUPCA Trust Fund balances;

d. Failure to provide adequate controls over receipts and disbursements of CUPCA Trust Funds;

e. Failure to provide periodic, timely reconciliations to assure the accuracy of CUPCA Trust Funds accounts;

f. Failure to provide consistent, written policies and procedures for CUPCA Trust Funds management and accounting;

g. Failure to provide adequate staffing, supervision, and training for CUPCA Trust Funds fund management and accounting;

h. Failure to make the CUPCA Trust Funds productive by investing the CUPCA Trust Funds, and maximizing in a manner consistent with the statutory restrictions, the return on the investment of the CUPCA Trust Funds;

i. Failure to manage the CUPCA Trust Funds as a prudent investor in a manner consistent with statutory restrictions and exercising reasonable care and skill; and

j. Failure to maintain confidentiality of information pertaining to the CUPCA Trust Funds.

57. The Defendant's breaches of trust and fiduciary duties with respect to the CUPCA Trust Funds have resulted in substantial, multi-million dollar losses to the Tribe. The Defendant is liable in damages for such losses. Damages are due from the inception of the Defendant's obligation to deposit the CUPCA Trust Funds through the present.

58. All conditions precedent to the initiation and maintenance of this action have been satisfied or otherwise occurred.

## SECOND CLAIM FOR RELIEF
## (Accounting: CUPCA Trust Funds)

59. The Ute Indian Tribe incorporates by reference and reavers the allegations of Paragraphs 1-58 of this Complaint.

60. The Defendant failed to properly and completely account for all of the CUPCA Trust Funds in an accounting and reconciliation consistent with the requirements of generally accepted accounting principles, auditing standards, and law.

61. The Ute Indian Tribe is entitled to a proper and complete accounting, reconciliation, and certification of the CUPCA Trust Funds to aid the Court and the Tribe in a final determination of the damages to which the Tribe is entitled. In addition, the Defendant should be ordered to preserve all records relating to the CUPCA Trust Funds.

62. All conditions precedent to the initiation and maintenance of this action have been satisfied or otherwise occurred.

**THIRD CLAIM FOR RELIEF**
**(Breach of Trust and Fiduciary Duties: Other Trust Funds)**

63. The Ute Indian Tribe incorporates by reference and reavers the allegations of Paragraphs 1-62 of this Complaint.

64. The Defendant exercised (and continues to exercise) broad authority and control over the Tribe's Other Trust Funds pursuant to treaties, executive orders, statutes, regulations and other federal law and common law from which emanates the trust and fiduciary obligations of the Defendant to the Tribe.

65. The Defendant is subject to numerous trust and fiduciary duties and obligations to the Ute Indian Tribe including, without limitation, the duties and obligations described in Paragraphs 25 and 26 of this Complaint. With respect to the Other Trust Funds, the Defendant repeatedly breached its trust and fiduciary obligations to the Tribe by mismanaging the Other Trust Funds, including by: maintaining too much of the Other Trust Funds in the Treasury Overnighter Program; holding on to bonds in the Other Trust Funds until maturity; failing to

actively manage the Other Trust Funds; maintaining too much of the Other Trust Funds in callable bonds; and failing to provide adequate staffing, supervision, and training for those charged with managing the Other Trust Funds. More generally, the breaches of trust and fiduciary duties include, but are not limited to, the following:

a. Failure to properly and completely account for all the Other Trust Funds;

b. Failure to timely invest all the Other Trust Funds in public debt securities with maturities suitable to the needs of the Other Trust Funds and bearing interest at rates taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities;

c. Failure to provide adequate systems for accounting for and reporting Other Trust Fund balances;

d. Failure to provide adequate controls over receipts and disbursements of Other Trust Funds;

e. Failure to provide periodic, timely reconciliations to assure the accuracy of Other Trust Funds accounts;

f. Failure to determine accurate cash balances for the Other Trust Funds;

g. Failure to prepare and supply the Tribe with periodic statements of account performance with balances of accounts available on a daily basis for the Other Trust Funds;

h. Failure to provide consistent, written policies and procedures for Other Trust Funds management and accounting;

i. Failure to provide adequate staffing, supervision, and training for Other Trust Funds fund management and accounting;

j. Failure to appropriately manage natural resources located within the boundaries of Indian reservations and trust lands including the duty to collect all funds due from the sale or use of the Tribe's natural resources;

k. Failure to make the Other Trust Funds productive by investing the Other Trust Funds, and maximizing in a manner consistent with the statutory restrictions, the return on the investment of the Other Trust Funds;

l. Failure to generally manage the Other Trust Funds as a prudent investor in a manner consistent with statutory restrictions and exercising reasonable care and skill;

m. Failure to properly maintain adequate records of the Other Trust Funds and assets;

n. Failure to cause an annual audit of the Other Trust Funds to be performed;

o. Failure to reconcile the Other Trust Funds to ensure that the Tribe receives a fair and accurate accounting of all Other Trust Funds;

p. Failure to derive maximum income from the sale or lease of the Tribe's trust assets;

q. Failure to timely collect all funds due from the sale or lease of the Tribe's trust assets or otherwise derived from the management of the Tribe's trust assets including the collection of late fees and interest as applicable;

r. Failure to properly credit and record all transactions relating to the Other Trust Funds and the Tribe's assets;

s. Failure to timely deposit receipts into interest bearing accounts; and

t. Failure to maintain confidentiality of information pertaining to the Other Trust Funds.

66. The Defendant's breach of trust and fiduciary duties with respect to the Other Trust Funds has resulted in substantial losses to the Tribe. The Defendant is liable in damages for such losses. Damages are due from the inception of the deposit of Other Trust Funds through the present.

67. All conditions precedent to the initiation and maintenance of this action have been satisfied or otherwise occurred.

**FOURTH CLAIM FOR RELIEF**
**(Accounting: Other Trust Funds)**

68. The Ute Indian Tribe incorporates by reference and reavers the allegations of Paragraphs 1-67 of this Complaint.

69. The Defendant failed to properly and completely account for all of the Other Trust Funds in an accounting and reconciliation consistent with the requirements of generally accepted accounting principles and auditing standards.

70. The Ute Indian Tribe is entitled to a proper and complete accounting and reconciliation of the Other Trust Funds to aid the Court and the Tribe in a final determination of the damages to which the Tribe is entitled. In addition, the Defendant should be ordered to preserve all records relating to the Other Trust Funds.

71. All conditions precedent to the initiation and maintenance of this action have been satisfied or otherwise occurred.

WHEREFORE, THE UTE INDIAN TRIBE REQUESTS:

1. Monetary damages in an amount to be determined at trial for breaches of trust and fiduciary duties, along with pre-Judgment and post-Judgment interest.

2. An award of the costs of suit incurred by the Ute Indian Tribe, including without limitation, attorneys' fees, expenses, expert costs and all other costs related to this action.

3. An Order directing the Defendant to provide a full and complete accounting, reconciliation, and certification of the CUPCA Trust Funds and the Other Trust Funds.

4. An injunction requiring that the Defendant comply with its trust and fiduciary duties with respect to the CUPCA Trust Funds and the Other Trust Funds.

5. Such other and further relief as the Court shall deem just and proper.

Dated: December 18, 2006

Charles L. Kaiser

Charles L. Kaiser (Attorney of Record)
Tom McNamara (Of Counsel)
Scot W. Anderson (Of Counsel)
Charles A. Breer (Of Counsel)
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379

ATTORNEYS FOR PLAINTIFF, UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION